UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

TRAVIS FRANCE,  )
 )
          Plaintiff,  ) Case No.: 2:23-cv-00444-GMN-NJK
 vs.  )
 ) **ORDER**
ZACHARY K. BRADFORD, *et al.*,  )
 )
          Defendants.  )
 )
 )

Pending before the Court is Plaintiff Travis France's ("Plaintiff") Motion to Remand, (ECF No. 13). Defendants Roger P. Benyon, Zachary K. Bradford, Lori L. Love, Larry McNeil, Matthew S. Schultz, Amer Tadayon, Thomas L. Wood, and nominal defendant CleanSpark, Inc. ("Defendants") filed a Response, (ECF No. 37), to which Plaintiff filed a Reply, (ECF No. 42).

For the reasons discussed below, the Court **GRANTS** Plaintiff's Motion to Remand.

I.    **BACKGROUND**

This is a shareholder derivative action removed from state court. This action is one of five related cases pending before the Court, in addition to a separate federal securities class action pending before the United States District Court for the Southern District of New York.[1] *See Ciceri v. Bradford et al.*, No. 2:21-cv-01004-GMN-BNW; *Perna v. Bradford, et al.*, No. 2:21-cv-01181-GMN-BNW; *Iraci v. Bradford et al.*, No. 2:23-cv-00315; *Atanasoff v. Bradford,*

---

[1] There are pending motions to remand in all but one of the related actions before this Court. (*See* Mot. Remand, ECF No. 16 in *Iraci*, No. 2:23-cv-00315-JAD-NJK); (Mot. Remand, ECF No. 11 in *Atanasoff*, No. 2:23-cv-00358-ART-BNW); (Mot. Remand, ECF No. 10 in *Smith*, No. 2:23-cv-00445-GMN-BNW); (Mot. Remand, ECF No. 13 in *France*, No. 2:23-cv-00445-GMN-BNW).

*et al.*, No. 2:23-cv-00358-ART-BNW; *Smith v. Bradford et al.*, No. 2:23-cv-00445-GMN-BNW; *Bishins v. CleanSpark, Inc. et al.*, No. 1:21-cv-00511-LAP.

Plaintiff is a current and continuous holder of nominal defendant CleanSpark ("CleanSpark") common stock since at least June 27, 2020. (Compl. ¶ 20, Ex. A to Pet. Removal, ECF No. 1-1). Defendants are a group of individuals who served in leadership positions at CleanSpark, including its CEO, President, CFO, Company Director, Chairman of the Board, Chief Revenue Officer, and Chair of the Audit Committee.[2] (*Id.* ¶¶ 23–28, Ex. A to Pet. Removal). By virtue of their positions, Plaintiff alleges that Defendants "owed CleanSpark and its shareholders fiduciary obligations of trust, loyalty, good faith, and due care, and were and are required to use their utmost ability to control and manage CleanSpark in a fair, just, honest, and equitable manner." (*Id.* ¶ 29, Ex. A to Pet. Removal).

According to Plaintiff, CleanSpark was an energy company that provided advanced energy market communications and management solutions. (*Id.* ¶ 2, Ex. A to Pet. Removal). In its 10-K Form filed with the United States Securities and Exchange Commission ("SEC") on December 17, 2020, CleanSpark stated it was "in the business of providing advanced software technology to solve modern energy challenges" concerning energy market communications and management. (*Id.* ¶ 56, Ex. A to Pet. Removal). However, in its 10-K Form filed almost a year later on December 14, 2021, CleanSpark now described itself as "a leading bitcoin mining and

---

[2] The exact position(s) allegedly held by each of the Defendants is as follows. Defendant Zachary K. Bradford ("Defendant Bradford") served as CleanSpark's CFO from March 2014 until October 2019, before becoming its President and CEO in October 2019. (*Id.* ¶ 22, Ex. A to Pet. Removal). Defendant Lori L. Love ("Defendant Love") served as CleanSpark's CFO from September 2019 to March 2022. (*Id.* ¶ 23, Ex. A to Pet. Removal). Defendant Matthew S. Schultz ("Defendant Schultz") served as CleanSpark's CEO from 2014 through October 2019, before coming its Executive Chairman of the Board in October 2019. (*Id.* ¶ 24, Ex. A to Pet. Removal). Defendant Larry McNeil ("Defendant McNeil") served as CleanSpark's Company Director and Chairman of the Board. (*Id.* ¶ 25, Ex. A to Pet. Removal). Defendant Thomas L. Wood ("Defendant Wood") served as CleanSpark's Chairman of the Board and Audit Committee before becoming a Company Director in January 2015. (*Id.* ¶ 26, Ex. A to Pet. Removal). Defendant Amer Tadayon ("Defendant Tadayon") served as CleanSpark's Chief Revenue Office. (*Id.* ¶ 27, Ex. A to Pet. Removal). Lastly, Defendant Roger P. Benyon served as a Company Director and Chair of the Audit Committee. (*Id.* ¶ 28, Ex. A to Pet. Removal).

diversified energy company." (*Id.* ¶ 57, Ex. A to Pet. Removal). In keeping with this transformation, Defendant Bradford stated during a conference call on December 14, 2021, that "CleanSpark is a bitcoin miner. Bitcoin mining is our primary business segment in terms of revenue. Our most efficient in terms of cost and margin and our most important in terms of maximizing value for our shareholders." (*Id.* ¶ 58, Ex. A to Pet. Removal)

Plaintiff alleges this shift in focus began a year prior, around December 10, 2020, when CleanSpark announced its acquisition of ATL Data Centers, Inc. ("ATL"), a traditional data center and bitcoin mining operation. (*Id.* ¶ 3, 67, Ex. A to Pet. Removal). Plaintiff asserts that Defendants represented their plan was to turn ATL into a "profitable, full-scale demonstration facility" to demonstrate the value of CleanSpark's software technologies. (*Id.* ¶ 3, Ex. A to Pet. Removal). Defendants alleged goal was to improve the ATL facility by expanding its power capacity to increase its bitcoin mining operations. (*Id.* ¶ 3–4, 67, Ex. A to Pet. Removal). Defendants originally estimated this expansion was to be completed by April 2021. (*Id.* ¶ 4, 68, Ex. A to Pet. Removal).

Defendants purportedly engaged in "extensive due diligence on ATL[]" which culminated in their conclusion that ATL was "a perfect fit" to layer CleanSpark's microgrid technology on top of ATL's existing mining operation. (*Id.* ¶ 5, Ex. A to Pet. Removal). Indeed, Defendant Bradford was quoted as saying that the acquisition was made "[a]fter an in-depth examination of the profitability under [ATL's] existing energy structure . . . ." (*Id.* ¶ 70, Ex. A to Pet. Removal). CleanSpark's stock price experienced an increase in value both following its acquisition announcement, and after a statement issued on January 5, 2021, stating that the ATL expansion would be completed "in the coming weeks." (*Id.* ¶ 78, Ex. A to Pet. Removal).

In addition to its acquisition of ATL, CleanSpark "actively sought to merge and/or acquire numerous other businesses as part of its purported growth strategy." (*Id.* ¶ 70, Ex. A to

Pet. Removal). This included CleanSpark entering an agreement with p2k and its sole stockholder and CEO, Defendant Tadayon, by which CleanSpark agreed to purchase all p2k's outstanding shares. (*Id.* ¶ 79, Ex. A to Pet. Removal). According to Plaintiff, CleanSpark's acquisition of p2k was not disclosed as a related party transaction despite Defendant Love, CleanSpark's CFO, serving as an officer at p2K. (*Id.* ¶ 80, Ex. A to Pet. Removal). Following this transaction, CleanSpark entered into an agreement with an existing client known as LAWCLERK, which was also not disclosed as a related party transaction even though Defendant Tadayon, CleanSpark's CRO, was listed as LAWCLERK's Chief Product Officer. (*Id.* ¶ 82, Ex. A to Pet. Removal). Despite not disclosing these transactions, CleanSpark purportedly engaged in several conflicted transactions, which it did disclose. (*Id.* ¶ 83, Ex. A to Pet. Removal).

On January 14, 2020, shortly after the acquisition of ATL was announced, short-seller Culper Research published a report claiming: (1) ATL was effectively the rebranded assets of a now-defunct company known as Virtual Citadel, Inc. which had gone bankrupt in 2020; (2) several months earlier, ATL was almost purchased by a public bitcoin company known as Marathon Patent Group ("Marathon"), but Marathon pulled out after discovering adverse information about ATL during the due diligence process; and (3) that despite Defendants maintaining that CleanSpark was experiencing "record revenue" and corporate "wins," these so-called "wins" were in fact significantly "overvalued and exaggerated." (*Id.* ¶¶ 6–7, 84–89, Ex. A to Pet. Removal). The Culper Research Report also exposed CleanSpark's previously undisclosed transactions with p2k and LAWCLERK. (*Id.* ¶ 91, Ex. A to Pet. Removal)

Following the publication of this report, CleanSpark's stock price rapidly fell, severely damaging investors. (*Id.* ¶ 8, 92, Ex. A to Pet. Removal). Defendants subsequently issued a press release, condemning the Culper Research report as "unfounded and reckless" and vowing to "investigat[e] the sources of these misrepresentations." (*Id.* ¶ 9, 93, Ex. A to Pet. Removal).

Plaintiff alleges that CleanSpark failed to disclose material facts about ATL's corporate history both before and after its acquisition. (*Id*. ¶¶ 95–116, Ex. A to Pet. Removal).

Further damaging CleanSpark's share price was the newfound delay in completing the ATL expansion project. (*Id*. ¶ 11, Ex. A to Pet. Removal). First, on February 12, 2021, Defendants acknowledged that the expansion would not be completed until sometime in the "mid-year 2021." (*Id*. ¶ 122, Ex. A to Pet. Removal). Next on 18, 2021, Defendant Bradford stated to investors stated that the expansion project would not be completed until "mid-summer." (*Id*. ¶ 126, Ex. A to Pet. Removal). On March 2, 2021, CleanSpark issued a press statement which mentioned that the new deadline was to complete the project sometime "this summer." (*Id*. ¶ 127–28, Ex. A to Pet. Removal). CleanSpark would issue subsequent press statements in March and April explaining that it now intended to complete the expansion project by "end of summer" (*Id*. ¶ 131–33, Ex. A to Pet. Removal), before issuing a press release in May 2021 stating that the goal was to complete the expansion by "summer 2021." (*Id*. ¶ 133, Ex. A to Pet. Removal). Plaintiff alleges that all the aforementioned projected completion dates were materially false and misleading. (*Id*. ¶ 134, Ex. A to Pet. Removal).

On June 18, 2021, Culper Research issued a follow up report revealing "material risks concerning the accuracy of CleanSpark's financial reporting and the current and future costs associated with CleanSpark's [b]itcoin mining business." (*Id*. ¶ 139, Ex. A to Pet. Removal); (*see id*. ¶ 135–38, Ex. A to Pet. Removal). On August 17, 2021, CleanSpark issued a press release stating that it now expected to complete the ATL expansion "this fall." (*Id*. ¶ 144, Ex. A to Pet. Removal). By December 14, 2021, CleanSpark had not completed the ATL expansion project. (*Id*. ¶ 148, Ex. A to Pet. Removal). Based on the foregoing, Plaintiff alleges that Defendants made a series of misrepresentations concerning the timeline of the expansion project and actions taken by Defendants to complete the project. (*Id*. ¶¶ 152–161, Ex. A to Pet. Removal).

Plaintiff alleges that Defendants acted in concert to: (1) facilitate and disguise their own violations of law; (2) conceal adverse information concerning CleanSpark's operations, financial condition, legal compliance, future business prospects, and internal controls; and (3) artificially inflate CleanSpark's stock price. (*Id.* ¶ 41, 173, Ex. A to Pet. Removal). Plaintiff asserts that Defendants' conduct violated CleanSpark's internal Code of Conduct and Governance. (*Id.* ¶¶ 45–55, Ex. A to Pet. Removal). Specifically, Plaintiff alleges that Defendants failed to maintain the accuracy of CleanSpark's "records and reports, comply with laws and regulations, conduct business in an honest and ethical manner, and properly report violations of the Code of Conduct." (*Id.* ¶ 55, Ex. A to Pet. Removal); (*see id.* ¶ 171–175, Ex. A to Pet. Removal). Plaintiff posits that Defendants' conduct, in addition to violating CleanSpark's internal Code of Conduct, also contravened state and federal securities law. (*Id.* ¶ 174, 191(c), 203(iii)).

Plaintiff filed the present Complaint in the Eighth Judicial Court of Nevada asserting the following causes of action: (1) breach of fiduciary duty; (2) unjust enrichment; and (3) corporate waste. (*Id.* ¶¶ 180–203, Ex. A to Pet. Removal). On March 23, 2023, Defendants removed this action to federal court based on federal question jurisdiction. (*See generally* Pet. Removal, ECF No. 1). Plaintiff now seeks to remand to state court. (*See generally* Mot. Remand, ECF No. 13).

## II. LEGAL STANDARD

Federal courts are courts of limited jurisdiction, possessing only those powers granted by the Constitution and by statute. *See United States v. Marks*, 530 F.3d 799, 810 (9th Cir. 2008). "It is to be presumed that a cause lies outside this limited jurisdiction, and the burden of establishing the contrary rests upon the party asserting jurisdiction." *Id.* (internal citations omitted). "The 'strong presumption against removal jurisdiction means that the defendant has the burden of establishing that removal is proper,' and the court resolves all ambiguity in favor

of remand to state court." *Hunter v. Philip Morris USA*, 582 F.3d 1039, 1042 (9th Cir. 2009) (quoting *Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992) (per curiam)).

Pursuant to 28 U.S.C. § 1441(a) provides for removal of a civil action from state to federal court if the case could have originated in federal court. Under 28 U.S.C. § 1331, a federal district court has jurisdiction over cases "arising under the Constitution, laws, or treaties of the United States." "The presence or absence of federal-question jurisdiction is governed by the 'well-pleaded complaint rule,' which provides that federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint." *Caterpillar Inc. v. Williams*, 482 U.S. 386, 388 (1987).

"[A] case can 'aris[e] under' federal law in two ways. Most directly, a case arises under federal law when federal law creates the cause of action asserted." *Gunn v. Minton*, 568 U.S. 251, 257 (2013). Alternatively, "when 'a claim finds its origins' in state law, there is 'a special and small category of cases in which arising under jurisdiction still lies.'" *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Manning*, 578 U.S. 374, 383 (2016) (quoting *Gunn v. Minton*, 568 U.S. 251, 258 (2013)). In *Grable*, the Supreme Court stated that "federal jurisdiction over a state law claim will lie if a federal issue is: (1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress." *Gunn*, 568 U.S. at 528 (citing *Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 313–14 (2005)).

///
///
///
///
///
///

## III. DISCUSSION

Plaintiff brings three causes of action, all under Nevada state law. Thus, the question is whether Plaintiff's Complaint, specifically his references to federal law and regulations in pleading Defendants' alleged conduct, nevertheless confers this Court with federal jurisdiction under the *Grable* doctrine.[3] For the reasons set forth below, the Court finds that it does not.

Beginning with the first factor, Plaintiff argues that a federal issue is not "necessarily raised" because his claims are predicated on Nevada state law, and only reference violations of federal law as an alternative basis for his state law claims. (Mot. Remand 8:4–9:25, ECF No. 13); (Reply 8:23–9:18, ECF No. 42). In response, Defendants maintain that a federal issue is necessarily raised because Plaintiff's Complaint expressly invokes federal law and the determination of Plaintiff's claims require interpretation of federal law.[4] (Resp. 15:10–16:10, ECF No. 37).

Several courts have considered similar scenarios to the one before this Court, where allegations for claims such as fraud, breach of fiduciary duty, unjust enrichment, and corporate

---

[3] Defendants do not contend this Court has diversity jurisdiction, (*see generally* Resp., ECF No. 37); (Pet. Removal), leaving the only issue before the Court whether it has federal question jurisdiction.

[4] Defendants also emphasize the fact that Plaintiff's Complaint mimics the language of the plaintiff's complaint in an earlier filed action pending before the Court. (Resp. 5:15–11:19); (*see* Compl., ECF No. 1 in *Ciceri*, No. 2:21-cv-01004-GMN-BNW). According to Defendants, because the instant Complaint allegedly mirrors the language and factual allegations of a federal action already pending before this Court, this case should be accepted and consolidated. This exact argument was rejected by the United States District Court for the Southern District of New York in *Flynn ex rel. Moody's Corp. v. McDaniel*. 689 F. Supp. 2d 686 (S.D.N.Y. 2010). In *Flynn*, the court disagreed with the defendants' blanket contention that consolidation was warranted simply because the complaints contained similar language and several factual allegations, instead noting that the plaintiffs' claims turned exclusively on New York law and did not "require interpretation or application of federal securities law." *Id*. at 691. The invocation of mimicry is not enough to establish federal jurisdiction. *See Valdez ex rel. Miller Entergy Resources, Inc. v. Miller*, No. 3:11-cv-462, 2012 WL 397814, at *10 (E.D. Tenn. Jan. 20, 2012) (rejecting the defendants' argument that remand was improper because of the similarity to other cases pending before the court). Indeed, in the case referenced by Defendants, the plaintiff expressly pled a federal claim, thereby eliminating the present controversy raised by the parties regarding subject matter jurisdiction. (*See* Compl., ECF No. 1 in *Ciceri*, No. 2:21-cv-01004-GMN-BNW). Accordingly, the Court proceeds to resolve Plaintiff's Motion to Remand by examining whether the facts underlying a plaintiff's claims solely rest on the interpretation and application of federal law.

waste in securities cases were solely alleged as state law causes of action, despite the fact that federal securities law was implicated and potentially consulted for the plaintiff(s) to prove their claims. These courts uniformly found that federal law did not confer federal question jurisdiction. *See Randolph v. Forsee*, No. 10-cv-2445, 2010 WL 5148293 (D. Kan. Dec. 13, 2010); *Flynn ex rel. Moody's Corp.*, 689 F. Supp. 2d at 686; *In re The Reserve Fund Securities and Derivative Litigation*, Nos. 09-cv-2011, 09-cv782, 09-cv-3786, 2009 WL 3634085, at *7 (S.D.N.Y. Nov. 3, 2009); *Ekas v. Burris*, No. 07-cv-61156, 2007 WL 4055630 (S.D. Fla. Nov. 14, 2007); *Fagin v. Gilmartin*, No. 03-cv-2631, 2007 WL 419286 (D.N.J. Feb. 1, 2007); *Gargiulo v. Decker*, No. 05-cv-00103, 2015 WL 755771 (C.D. Cal. Mar. 30, 2005); *In re Textainer P'Ship Secs. Litig.*, No. 05-cv-0969, 2005 WL 1791559 (N.D. Cal. July 27, 2005).

*Ekas* is particularly instructive. In *Ekas*, the plaintiffs filed a verified derivative complaint by shareholders on behalf of a nominal defendant against several members of its board of directors and executive officers for breach of fiduciary duties and unjust enrichment. *Id*. at *1–2. The plaintiffs argued that there was no federal question to support removal because their claims arose under state law. *Id*. The plaintiffs further contended that a complaint alleging state law claims based in part on false statements in documents required by federal securities law cannot be removed. *Id*. In opposition, the defendants claimed that, to adjudicate fully the allegations in the complaint, the court would need to resolve multiple questions of federal law. *Id*. at *4. The defendants pointed to various allegations in the complaint that they claimed showed that the violations of law stemmed from the alleged failure of the defendants to have in place a federally mandated control structure that ensured the accuracy of financial information and compliance with GAAP. *Id*. Additionally, the defendants asserted that the plaintiffs had sought to avoid federal question jurisdiction through artful pleading since it was actually federal law, not state law, that provided the duties and obligations at issue. *Id*.

///

The *Ekas* court agreed with the plaintiffs and found that the plaintiffs' "passing references" to federal law in the complaint were not essential to proving any of the elements of the state causes of action alleged therein. *Id*. The court found that, although the duty to comply with federal laws was one of many duties that were allegedly breached by the defendants, the "gravamen" of the breach of fiduciary duty rested upon the defendants "knowingly approving the Company's violation of GAAP." *Id*. The court explained that, "[c]learly, in proving that a breach of fiduciary duty occurred, [p]laintiffs may point to evidence that the officers and directors failed to act in good faith when they made false statements. But the fact that some of those false statements were made to the SEC and may have violated federal law [was] tangential to proving the breach of fiduciary duty." *Id.* at *4. The court found that adjudication of federal law would not be necessary because the complaint contained "[a]llegations that simply provided a factual basis for a [state law or federal law] claim." *Id*. at *5.

Although the defendants in *Ekas* made much of the fact that the complaint tracked the language of Section 13 of the Exchange Act, the court found that mere reference to federal securities law was insufficient and that such allegations were included in the complaint to simply set forth the various duties of the directors and officers of the defendants. *Id*. Thus, if those allegations were proven, they would provide evidence of the defendants' role in the company but would not require an examination of federal law. *Id*. In other words, the court rejected the defendants' contention that it would "need to construe and interpret the Exchange Act and Sarbanes–Oxley [Act] and whether defendants violated provisions of those federal laws." Instead, the court found that it only needed to examine evidence relating to the defendants' maintenance of the accounting of the company and, while there might be similarities to federal accounting requirements, that inquiry would not require the court to delve into federal law. *Ekas*, at *5.

///

Applying *Ekas* and similar cases to the instant action, although Plaintiff is the "master of his complaint," the relevant inquiry is whether he crafted the complaint in such a way that it relied solely on state law. For example, if Plaintiff's Complaint explicitly pled violations of federal law as the basis for this claims, this action was properly removed to federal court for disposition, regardless of how the claims are labeled in the Complaint. However, if violations of federal securities law are an alternative way of proving the conduct, and instead merely provide a factual basis for Plaintiff's state claims, then references alone to federal law are insufficient to create federal jurisdiction. Thus, the Court is driven by the substance of the allegations underlying claim rather than its label.

Returning to Defendants' argument, the Court disagrees with Defendants that Plaintiff's Complaint necessarily raises issues of federal law. (Resp. 14:10–23). Throughout the Complaint, Plaintiff alleges that Defendants violated relevant legal and regulatory requirements, which include CleanSpark's own internal policies, state securities laws, and federal securities laws. (Compl. ¶¶ 34–35, 48, 191(c), 203(iii), Ex. A to Pet. Removal). It is true that these allegations include general references to federal securities law. But mere references to federal law is insufficient to create federal question jurisdiction. *Gargiulo*, 2005 WL 755771, at *2–3 (finding state law claim for breach of fiduciary duty raised no federal claim because "although the complaint discusses possible violations of federal securities law, such references are not 'essential elements' of any of [p]laintiff's state law claims"); *In re Textainer P'Ship Secs. Litig.*, 2005 WL 1791559, at *8 (finding state law claim for breach of fiduciary duty raised no federal claim because such references were not an essential element of any of the plaintiff's state law claims); *Emulex Corp. v. Broadcom Corp.*, No. 09-cv-0677, 2009 WL 1872694, at *4 (C.D. Cal. June 29, 2009) ("While Emulex's fraud claim may embrace a point of federal securities law, federal law did not create Emulex's claim and is not essential in determining whether Emulex has a right to relief.").

Here, the gravamen of the misconduct alleged by Plaintiff does not depend on the interpretation of federal securities law. *See Franchise Tax Bd. v. Constr. Laborers Vacation Tr.*, 463 U.S. 1, 9 (1983) (stating that "[w]e have often held that a case 'arose under' federal law where the vindication of a right under state law necessarily turned on some construction of federal law"). Instead, it is premised on whether Defendants violated a special duty of care governed by state law in the case of the fiduciary duty and corporate waste claims, and whether they unduly benefited pursuant to the unjust enrichment claim. (*See* Mot. Remand 8:17–9:25) (citing the elements of a breach of fiduciary duty, unjust enrichment, and corporate waste claims under Nevada law). Indeed, Plaintiff's Complaint identifies that Defendants conducted violated CleanSpark's own Internal Code of Conduct and Governance, state securities law, and federal securities law. Thus, "[f]ailure to comply with federal securities law is alleged as one of the many charged consequences of the Defendants' mismanagement. Whether federal securities laws were in fact violated is not a necessary element of determining whether Defendants' alleged mismanagement rose to the level of a breach of fiduciary duty[,]" unjust enrichment, or corporate waste. *Fagin*, 2007 WL 419286, at *5.

Defendants additionally argue that federal law is implicated because the allegedly false or misleading statements were made in SEC filings, press releases, and other public documents. (Resp. 15:11–17:13). However, this argument has been routinely rejected by district courts. *See Randolph*, 2010 WL 5148293, at *7 ("Likewise, defendant's failure in this case to comply with federal rules by misrepresenting or omitting information on federally-required forms would simply provide some evidence of a breach, but the Court need not construe federal law in order for plaintiff to recover."); *Ekas*, 2007 WL 4055630, at *4 ("Clearly, in proving that a breach of fiduciary duty occurred, [p]laintiffs may point to evidence that he officers and directors failed to act in good faith when they made false statements. But the fact that some of the false statements were made to the SEC and may have violated federal law [was] tangential

1  to proving the breach of fiduciary duty."); *Fagin*, 2007 WL 419286, at *4 ("In the Court's
2  opinion, however, these factual predicates alleging that one component of the alleged
3  wrongdoing was, in essence, making false filings with the SEC, do not transform the state
4  claims into claims seeking redress for federal violations and do not raise a substantial and
5  disputed question of federal law."). Indeed, "the fact 'that the [allegedly false] statements were
6  made in a federally required document does not change the inquiry [into] whether, standing
7  alone, they were false or misleading . . . under state law." *Flynn ex rel. Moody's Corp.*, 689 F.
8  Supp. 2d at 691 (quoting *Sung v. Wasserstein*, 415 F. Supp. 2d 393, 406 (S.D.N.Y. 2006); *see*
9  *Merrell Dow Pharms., Inc. v. Thompson*, 478 U.S. 804, 813 (1986) ("The mere presence of a
10 federal issue in a state cause of action does not automatically confer federal-question
11 jurisdiction."). Again, the fact that Defendants' alleged misconduct tangentially implicates
12 federal law does not *de facto* cause the federal law to predominate over Plaintiff's state law
13 claims. *See Merrell Dow Pharmaceuticals Inc.*, 478 U.S. at 807 (holding that reference to
14 federal law merely as on available criterion for determining whether a violation of state law has
15 occurred is insufficient to establish jurisdiction).
16     Lastly, Defendants posit that that a federal issue is necessarily raised because Plaintiff,
17 in his prayer for relief, included multiple declarations which require interpretation of federal
18 laws. (Resp. 5:8–13, 11:14–19, 14:10–18, 23:25–24:3). Plaintiff counters that this argument is
19 unpersuasive because his claims are rooted in state law, and Nevada "has a strong interest in the
20 applicable of its laws to Nevada-based corporations." (Reply 8:22–9:12).
21 ///
22 ///
23 ///
24 ///
25 ///

The exact paragraphs at issue are as follows:

WHEREFORE, Plaintiff demands judgment as follows:

>   (b) Finding that the Individual Defendants violated applicable securities laws, breached their fiduciary duties to the Company, and were unjustly enriched;
>
>   (c) Directing [CleanSpark] to take all necessary actions to reform and improve is corporate governance and internal procedures to comply with applicable laws and to CleanSpark and its shareholders from a repeat of the damaging events described herein, including, but not limited to, putting forward to stockholder vote resolutions for amendments to the Company's Bylaws or Articles of Incorporation, and taking such other action as may be necessary to place before shareholders for a vote the following corporate governance proposals or policies:
>   . . .
>
>      (iii) a proposal to strengthen the Board's supervision of operations and compliance with applicable state and federal laws and regulations[.]

(Compl. ¶ 203(b), (c)(iii). The Ninth Circuit has held that that the "mere presence of a federal issue in a state cause of action does not automatically confer federal-question jurisdiction." *Wander v. Kaus*, 304 F.3d 856, 858 (9th Cir. 2002) (quoting *Merrell Dow*, 478 U.S. at 813). Here, the Court is unpersuaded that these paragraphs necessarily invoke federal question jurisdiction.

At the outset, it bears noting that these paragraphs are not a separate *claim* for declaratory judgment, but instead are a form of *relief* as a remedy pursuant to Plaintiff's state law claims. *See Molina Healthcare, Inc. v. Celgene Corp.*, No. 21-cv-05483, 2022 WL 161894, at *12 (N.D. Cal. Jan. 18, 2022). And "merely naming a federal statute in a complaint will not confer federal jurisdiction if the only relief the plaintiff actually wants is based on state rather than federal law." *Saturday Evening Post Co. v. Rumbleseat Press, Inc.*, 816 F.2d 1191, 1995 (7th Cir. 1987), *abrogated on other grounds recognized by*

*Glickenhaus & Co. v. Household Int'l, Inc.*, 787 F.3d 408, 426 (7th Cir. 2015). Defendants have not shown that Plaintiff would be required to prove such federal violations as necessary element of its state law claims, including to obtain declaratory relief that the conduct at issue violates state law. "Granted, if [Defendants'] acted in accordance with federal law, that immunize some of the conduct at issue from [Plaintiff's] claims, but the possibility of that sort of federal defense, even if apparent from [Plaintiff's] allegations, is not a basis for federal jurisdiction." *Molina Healthcare, Inc.*, 2022 WL 161894, at *12 (citing *Caterpillar*, 482 U.S. at 393); *see Rios v. CWGS Enters., LLC*, No. 17-cv-03614, 2017 WL 3449052, at *3 (C.D. Cal. Aug. 11, 2017) ("Plaintiff alleges an ADA claim only so far as it independent constitutes a violation of the California Unruh Civil Rights Act."). In sum, any question of federal declaratory relief sought by Plaintiff is collateral, rather than necessary, to Plaintiff's state law claims.

Accordingly, the Court's analysis begins and ends with whether a federal issue is "necessarily raised" by Plaintiff's Complaint.[5] Because Plaintiff's claims can be supported by alternative and independent theories not dependent on federal, federal question jurisdiction does not attach. *See Rains v. Criterion Sys., Inc.*, 80 F.3d 339, 346 (9th Cir. 1996) ("When a claim can be supported by alternative and independent theories—one of which is a state law

---

[5] Although the Court finds remand is appropriate because a federal issue is not necessarily raised, the Court additionally notes that this case also does not raise a substantial federal issue. Defendants' Response emphasizes the important federal interest in adjudicating securities litigation, (Resp. 20:6–21:2), but "Congress envisioned *both* federal and state courts adjudicating [securities] claims." *In re The Reserve Fund Secs. and Derivative Litig.*, 2009 WL 3634085, at *7 (quotation omitted) (emphasis added). As the Supreme Court wrote in *Matsushita Electric Indus. Corp. v. Epstein*, "Congress plainly contemplated the possibility of dual litigation in state and federal courts relating to securities transactions." 516 U.S. 367, 383 (1996). "Moreover, the fact that a state law may claim may affect an important federal interest is not sufficient grounds upon which to base federal jurisdiction." *In re The Reserve Fund Secs. and Derivative Litig.*, 2009 WL 3634085, at *7 (quotation omitted). Here, interpretation of federal securities law is not necessary to resolve the case. Plaintiff's state law claims stand on their own merit and therefore do not require resolution of a substantial, disputed question of federal law. *See In re Textainer P'Ship Secs. Litig.*, 2005 WL 1791559 at *8 n.8.

theory and one of which is a federal law theory—federal question jurisdiction does not attach because federal law is not a necessary element of the claim.").

Finally, Plaintiff argues the Court should reward him costs and attorney's fees incurred based on Defendants' improvident removal. (Mot. Remand 12:8–13:2).

Title 28 U.S.C. § 1447 provides that, along with remanding the case to state court, this Court "may require the payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal." Absent unusual circumstances, courts may award attorney fees under the attorney fee provision of the removal statute only where the removing party lacked an objectively reasonable basis for seeking removal; conversely, where an objectively reasonable basis exists, fees should be denied. *Martin v. Franklin Capital Corp.*, 546 U.S. 132, 141 (2005). An award of attorney's fees can be granted in the absence of bad faith regarding removal. *Balcorta v. Twentieth Century-Fox Film Corp.*, 208 F.3d 1102, 1106 n.6 (9th Cir. 2000).

"[G]rappling with whether there is federal question jurisdiction when no federal cause of action appears on the face of plaintiff's well-pleaded complaint . . . 'extremely complicated and the related jurisdictional issues are difficult to navigate.'" *Sung*, 2006 WL 435449, at *15 (citation omitted). Although Defendants did not prevail in this action, the Court is unable to conclude that their basis for removal was not "objectively reasonable" in light of the complex area of law underlying their removal. *Martin*, 546 U.S. at 141. Therefore, a grant of attorney's fees is not appropriate here.

///
///
///
///
///

## IV. CONCLUSION

**IT IS HEREBY ORDERED** that Plaintiff's Motion to Remand, (ECF No. 13), is **GRANTED.**

**IT IS FURTHER ORDERED** that the case be remanded to the Eighth Judicial District Court. The Clerk of the Court shall remand this case back to state court and thereafter close this Court's case.

**IT IS FURTHER ORDERED** that Defendants' Motion to Consolidate Cases, (ECF No. 6), is **DENIED as moot.**

**IT IS FURTHER ORDERED** that Defendants' Motion to Dismiss, (ECF No. 25), is **DENIED as moot.**

**IT IS FURTHER ORDERED** that Defendants' Motion to Stay Case, (ECF No. 30), is **DENIED as moot.**

**IT IS FURTHER ORDERED** that Defendants Benyon, McNeil, and Wood's Motion to Dismiss, (ECF No. 34), is **DENIED as moot.**

**DATED** this  4th  day of May, 2023.

_____
Gloria M. Navarro, District Judge
UNITED STATES DISTRICT COURT